City of Belleville et al. *v.* Stookey.

in a verdict and judgment in favor of plaintiff below, for the sum of $415.84. Defendant below appealed.

M. McCONNEL, and C. EPLER, for Appellant.

J. L. AND C. M. MORRISON, for Appellee.

---

CITY OF BELLEVILLE *et al.*, Appellants, *v.* SAMUEL STOOKEY, Appellee.

APPEAL FROM ST. CLAIR.

Cities and towns may acquire the title to streets by conveyance, dedication, prescription, or by a record of the town plat. But the ground for streets should be properly indicated on the town plats, and other requisitions of the statute should be complied with, to enable the city or town, and others, to enforce the opening of such streets.

Samuel Stookey, the appellee, filed his bill for an injunction in the St. Clair Circuit Court, against the City of Belleville and Charles Palme, Street Inspector.

The bill alleges that Stookey is owner of and resides on a tract of land, describing it by metes and bounds; that he claims

under a deed from J. D. Hughes and Theodore Engelmann, made 27th of September, 1851, and that ever since he has paid his city and county taxes *generally* on the said tract by the description of 229 feet on 1st South street by 314 on Charles street.

Former conveyances are set out up to one from *Wesley Coleman and Wife* to James Affleck, describing said lands by metes and bounds, dated 15th of May, 1844. Coleman had bought the tract in question together with other lands from one B. S. Edwards, in 1840. After Coleman had purchased the said tracts, he recorded a map of an addition to the town of Belleville, 17th April, 1840, on which are twenty-seven lots numbered, none of which cover the tract of land conveyed to said Stookey, but said tract has lines drawn across it indicating how the same *might eventually* be subdivided into lots, but the size of said lots are not mentioned, or their length or width, or their number, nor the size of the *proposed* streets or alleys, nor the corner from which to make future surveys of the same, as appears on said plat.

Alleges that said tract, of which Stookey is now the owner, has been inclosed for more than thirteen years, and has been sold by the respective owners in a compact body. Alleges that the City of Belleville lately insists on having a fee simple in the supposed alley, and that public has a right of way in said alley, and has directed the street inspector, Charles Palme, to open said alley, which opening would be a matter of irreparable injury to said Stookey.

Defendants demurred generally to this bill, which demurrer the Court, SNYDER, Judge, presiding, overruled and rendered a decree of perpetual injunction, etc. And the City of Belleville appeals this case. By consent of record, this appeal was taken to the Second Grand Division.

The errors assigned are, that the court overruled the plaintiff's demurrer; the court did not dismiss the bill, but rendered a decree of perpetual injunction.

G. KOERNER, for Appellants.

W. H. AND J. B. UNDERWOOD, for Appellee.

WALKER, J. Cities and towns may acquire the title to streets and alleys by conveyance, by dedication, by prescription, or by the surveying and platting of a town or city, if acknowledged and recorded in the mode prescribed by the statute. The plat in question, and under which the city claims the street in controversy, was made and recorded in 1840, and is governed by the act of 1833, prescribing the mode of making

and recording town plats. The first section, R. L., p. 599, provides, that any person wishing to lay out a town, or an addition, or sub-division of out lots, shall cause the same to be surveyed, and a plat or map thereof made by the county surveyor, which shall particularly describe all streets, alleys, commons or public grounds, and all in and out lots, etc., giving the names, widths, corners, boundaries, and extent of all such streets and alleys. By the second section, it is required that all in lots intended for sale, shall be numbered in progressive numbers, or by squares in which they are situated, and their precise length and width shall be stated on the plat or map; and out lots, which do not exceed ten acres, are likewise required to be surveyed and numbered, and their exact length and width stated on the map or plat, together with any streets, alleys, or roads which may divide or border on the same.

The third section requires the proprietor, at the time of the survey, to set a stone at the corner of the public ground, if any, or if there be none, then at the corner of some lot, from which to make future surveys; the point at which it is placed is required to be designated on the plat. The fourth section requires the plat, after its completion, to be certified by the surveyor and proprietor, and before the recording the same, to acknowledge it before one of the officers named in the section, which acknowledgment is required to be certified on the plat, and the certificates, with the plat, are required to be recorded. The fifth section provides that the plat, when made out, certified, acknowledged, and recorded, as required by the act, shall vest the title in the land intended for streets, alleys, ways, commons, or other public uses, in such town or city, or addition thereto, and for the uses and purposes set forth and expressed or intended.

It will be perceived in this case, that the ground claimed as a street, is not named on the plat as such, nor is its length, width, boundaries and corner given, as the statute requires. The certificate accompanying the plat, also fails to refer to, or in any wise to designate it as such. From the plat and certificate it cannot be known whether it was designed for a street or lot, or, in fact, whether for either. In this respect, there is a failure to conform to the requirements of the statute, and as the plat and certificate, under the statute, takes the place of a deed of conveyance, its provisions should have been, at least, so far observed as to describe it with such a degree of certainty, that it might be determined for what purpose it was intended. Even if we could infer from the plat and certificate that it was designed for a street, this map affords no means of ascertaining its length or width. If it were conceded that the observance of every requirement of the statute was not essential to the valid-

ity of the plat, still enough must appear to enable a location, by metes and bounds of the streets, alleys, ways and roads, and to distinguish them from lots, before the title can vest in the city by operation of the plat. The plat has, by the statute, the force and effect of a deed to pass the title to the streets, alleys, etc., and to have that effect, it should describe them with such certainty, by measurement and description, that they may be located. This plat and certificate is insufficient, under the statute, to pass the title to the land in dispute, to the city.

It then becomes simply a question of intention, whether there was a design to dedicate this property to the city for the purpose of a street. This question of intention must be determined by all the circumstances which surrounded the transaction. It is alleged in the bill that this piece of ground had been sold by Coleman with the supposed adjoining lots, in a body, and not by the lines on the map. That he and his assigns, including complainant, had been assessed by the city, and paid taxes on the ground in controversy ever since the plat was recorded. That it had never been opened, traveled or repaired as a street, at any time. That no lots had ever been sold adjoining it, by which it became necessary to be used by the purchasers or others for that purpose. That the lines on the map or plat were only intended to indicate the manner in which it might be sub-divided at some future time. The allegations are admitted by the demurrer to be true, and from them it becomes necessary to determine whether an intention to dedicate this property by the owner, or an acceptance on the part of the city, is manifested. These acts on the part of the owner and city, instead of indicating, repel the presumption of such an intent. If the city considered it a public street, why tax it, and compel the persons claiming it, to pay such taxes in the same manner as they did upon their other property? Or why permit it to remain inclosed for such a length of time, without the assertion of any right or claim to it?

Again, the allegations which stand admitted as true, do not warrant the presumption that Coleman regarded the property as having been dedicated, but they, on the contrary, repel any such presumption. If he had supposed that he had dedicated the property, why sell and convey it as his own? Or if his grantee had supposed that it had been dedicated, why would he become the purchaser of it? And why pay taxes upon it as his own if he knew or supposed it belonged to the city? While the statute of limitations can not bar the public, still, long continued possession, adverse to the claim of the public, may be shown to repel the presumption of a dedication, sought to be established by equivocal or doubtful acts of the owner, and the

greater the length of possession, where the public have never been in the enjoyment of the property, the stronger will be the presumption against the intention to dedicate.

In this case the occupancy by the defendant in error, and those under whom he claims, had been nearly double the length of time required to create a bar under the statute of limitations, had the claim been asserted against him by an individual, and during that period, there seems to have been no claim or assertion of right by the city, but, on the contrary, it seems to have recognized the individual claims by collecting taxes on this property. This, we think, when taken with the other facts in the case, raises a strong presumption that this property was never dedicated, and accepted by the city, both of which is essential to such a claim.

Again, the bill alleges, and the demurrer admits that it was not the intention of the proprietor to divide the ground at the time of the recording of the plat, but that there was an intention to do so at some future time. This averment seems to be supported by the plat which was made and recorded. Until he carried that intention into effect by selling lots on this tract by the lines indicated on the plat, we cannot infer an intention to dedicate. Had he made such sales, then he would doubtless have indicated such an intention, but until that time, he had a right to change his mind, and sell the whole of the ground as one tract. This right he has exercised, and by doing so, the city never became the owners of the property by dedication, wherefore the decree of the court below must be affirmed.

*Decree affirmed.*