BERNARD A. ECKHART et al.

v.

AGNES F. IRONS et al.

Filed at Ottawa April 3, 1889.

1. DEDICATION—of the essential elements. An intention to dedicate land must be clearly and unequivocally manifested by the owner, and there must be an acceptance of the dedication.

2. SAME—extent of ground dedicated—dotted lines on plat, as limiting dedication. A plat of lots in a block showed a dotted line across the north end of the lots, twenty feet south of the street on which the lots fronted, with the words along such dotted line, "line of front of building twenty feet from the street." The lines indicating the east and west boundaries of the lots did not stop at such dotted line, but extended to the street: Held, that such dotted line did not show an intention to dedicate the twenty feet off the north end of the lots, but on the contrary, the words along such line clearly negatived any such intent. Such line is but a designation on the plat of the front line of the buildings to be erected thereon.

3. TOWN PLAT—figures on plat—whether indicating the width and length of the lots. A certificate of the acknowledgment of the plat of an addition showed that the figures in black ink near the center of the lots indicated the number of such lots. There were other figures along the ends and sides of the lots, but nothing, either on the face of the plat or in the certificates thereto attached, to show what they meant: Held, that such last named figures were meaningless, and could not be taken as indicating the width and length of the lots; but if such figures appeared to represent distances, they would have to give way to the actually established metes and bounds of the lots.

4. CONVEYANCES—limitation as to use of parts of the lots conveyed—a deed construed. The plat of an addition to a town showed a dotted line across the north end of the lots, twenty feet south of their northern termini, marked "line of front of buildings." The deeds of the proprietor granted the lots by their numbers upon the plat. After the granting clause were the words, "together with the exclusive use of the court-yard between said lots and the street," thereby referring to the twenty-foot strip off the north end of the lots, "upon condition that such yard shall only be used as a front-door yard, and that said party of the second part shall put no building upon said yard except front-door steps, nor erect any fence of unusual height, which shall obstruct the view of the neighborhood:" Held, that such restriction in the use

of the north twenty feet was intended for the benefit of the other lots fronting on the same street, and to the extent of such restriction it created an implied equitable servitude of each lot in favor of the other lots.

5. In such case, each purchaser taking such a deed took the estate burdened with a like servitude in favor of all the lots, and an equitable easement attached to each and every lot so conveyed, so that the equitable rights and burdens of each lot were mutual and reciprocal, and each lot owner was subjected to the equitable burden, and entitled to the enjoyment of the easement.

6. Such clause in a deed for a lot did not have the effect of limiting the grant to the dotted line, as the grant was of the whole lot as platted. The clause, "together with the use of the court-yard between said lot and the street," must be construed with the plat, and what precedes and follows in the deed.

7. The deeds, after such words of limitation as to the use of the court-yard, further recited: "It being the intention of the party of the first part, in reserving said court-yard, to benefit and improve the neighborhood, said reservation to continue for fifteen years from the date of record of the plat of said subdivision; after the expiration of said term, the fee of said court-yard shall vest in said party of the second part, his heirs and assigns, without any further conveyance." There was no clause for forfeiture for the breach of any condition: *Held*, that the estate was not one upon condition, and that the title vested in the grantee to the whole of the lot, and that the clause was simply a limitation upon the use of the north twenty feet for the period of fifteen years from the recording of the plat.

8. SAME—*exceptions—reservations—the distinction.* The clause in the deed in this case does not create an exception, for the reason that by an exception the grantor withdraws from the effect of the grant some part of the thing itself which would otherwise be included in the grant. Nor can it, strictly speaking, be said to be a reservation, for a reservation must be to the grantor or the one creating the estate, and must be of something arising out of the thing granted, as, an easement, or the like.

9. SAME—*restrictions as to use of property—not favored—but enforcible.* Restrictions on the use of property held in fee are not favored, yet when the intention of the parties is clearly manifested in the creation of restrictions or limitations upon the use of the grantee, for the use of the grantor, his heirs or assigns, a court of equity will enforce the same.

10. SAME—*repugnant provisions—rule of construction.* Where, in construing a deed, there is a clear repugnance between the grant and that limited in the *habendum* or *reddendum*, the latter will be required to yield to the clear words of the grant; but if the words following the

grant can be so construed that all may stand together, by limiting the estate, without contradicting the grant, that construction must be adopted to give effect to each clause of the deed. Where there is a present grant, any words showing it is to take effect *in futuro* are inconsistent with the grant.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Messrs. ABBOTT, OLIVER & SHOWALTER, and Messrs. HOLDEN & FARSON, for the plaintiffs in error:

A person can not have an easement in his own land. *Bridge Co.* v. *Curtis,* 103 Ill. 410.

Where one owns a piece of land, and so arranges it that there would be an easement in one parcel were it the land of another, the easement exists upon the severance of the title. *Morrison* v. *King,* 62 Ill. 30; *Ingals* v. *Plamondon,* 75 id. 118.

Platting concludes the original owner, and all claiming under him, and operates by way of estoppel. *Canal Trustees* v. *Havens,* 11 Ill. 556; *Alvord* v. *Ashley,* 17 id. 363.

When purchasers are induced to believe that lands are dedicated to future lot owners, as, for a landing place, the dedicator can not defeat the same. *City* v. *Transportation Co.* 12 Ill. 59.

The dedication for the benefit of future lot owners, as, for a landing, (marked "reserved,") may be by plat alone, when it is evident what the dedication is for. *Godfrey* v. *City,* 12 Ill. 35.

The foundation of the doctrine of easements is a disposition and severance. *Morrison* v. *King,* 62 Ill. 30; *Ingals* v. *Plamondon,* 75 id. 118.

The conveyance of a lot by plat conveys no title beyond the limits of the lot, yet an easement appurtenant to the lot would pass. *Gebhardt* v. *Reeves,* 75 Ill. 301; *Smith* v. *Heath,* 102 id. 130.

The deed did not create an easement, and could not convey it. The easement in the land in front of lots 17 and 18 could not be conveyed by a deed conveying those lots, because the easement was appurtenant to other lots.

An easement appurtenant can only pass by a deed conveying the lands to which it is appurtenant. *Railroad Co.* v. *Koelle,* 104 Ill. 455; *Koelle* v. *Knecht,* 99 id. 396; *Garrison* v. *Rudd,* 19 id. 564; *Fitch* v. *Johnson,* 104 id. 121.

The easement appurtenant to lot 5, block 9, for light, air, prospect and view, over the court-yard in front of lots 17 and 18, would not pass by a conveyance of lots 17 and 18, or by a conveyance of the court-yard itself. How, then, can it be said that any one of the deeds is material? *Hadden* v. *Shoutz,* 15 Ill. 584; *Garrison* v. *Rudd,* 19 id. 564.

Mr. H. F. WHITE, for the defendants in error:

A dedication is the act of devoting or giving some property to some proper object in such manner as to conclude the owner. 2 Smith's Lead. Cas. 180; *Hunter* v. *Trustees,* 6 Hill, 407.

At common law a negative easement of this character can only be acquired by grant, commonly by deed, or by prescription, which presupposes a grant. In this State it can not be acquired by prescription. *Guest* v. *Reynolds,* 68 Ill. 478.

In order that there shall be a grant or deed, there must be a grantee. Laflin was only a party to the plat, and there was no grantee or private easement claimed by the plat. *Railroad Co.* v. *Railway Co.* 85 Ill. 212.

A mere license to use property, although houses are built about it, as a street, is not a dedication. Washburn on Easements, (3d ed.) *151; *Morse* v. *Stoker,* 1 Allen, 150.

An intention to dedicate may be shown by writing, by declaration or by acts, and it must be unequivocal. *Gentleman* v. *Soule,* 32 Ill. 279; Washburn on Easements, (3d ed.) *133; *Rees* v. *City,* 38 Ill. 322.

It is purely a question of intention, which a deed shows. *Godfrey* v. *City of Alton,* 12 Ill. 29; *City of Alton* v. *Transportation Co.* id. 55; *Marcy* v. *Taylor,* 19 id. 634; *Waugh* v. *Leech,* 28 id. 488.

The intention governs. *Harding* v. *Town of Hale,* 61 Ill. 192; *Rees* v. *City,* 38 id. 322; *Woodyear* v. *Hadden,* 5 Taunt. 125; *Insurance Co.* v. *Littlefield,* 67 id. 368; *Tillman* v. *People,* 12 Mich. 409; *Holdane* v. *Trustees,* 23 Barb. 103.

Mere acting so as to lead persons to think that a dedication is made, will not make a dedication, if there be an agreement that explains the transaction. *Marcy* v. *Taylor,* 19 Ill. 636; *Barraclaugh* v. *Johnson,* 8 A. & E. 99.

The intention of the owner must be clear and unambiguous. *McIntyre* v. *Storey,* 80 Ill. 127; *Chicago* v. *Johnston,* 98 id. 618; *Kelly* v. *Chicago,* 48 id. 389; Angell on Highways, secs. 11, 143-151; Smith's Lead. Cas. 182; *Insurance Co.* v. *Littlefield,* 67 Ill. 368.

Figures on a plat are not sufficient to make out a dedication. *Village of Winnetka* v. *Prouty,* 107 Ill. 218.

This dedication by the plat is not sufficient, and is no grant. *Railroad Co.* v. *Railroad Co.* 85 Ill. 211.

The plat conveyed no fee to the public. *Trustees* v. *Walsh,* 57 Ill. 367.

The dotted line on the plat is not a dedication. Reversion clause construed. Effect of taxing land. *Town of Princeton* v. *Templeton,* 71 Ill. 68; *Van Valkenburg* v. *Milwaukee,* 30 Wis. 338.

In platting a village, a square left blank, and no allusion made to it, is no dedication. *Princeville* v. *Auten,* 77 Ill. 325.

A strip marked "depot" on a plat is not enough, although used for years. *McWilliams* v. *Morgan,* 61 Ill. 89.

A plat is explained by the deed. Assent thereto by mortgagee, and right to access to street from the lot; doctrine of: *Smith* v. *Heath,* 102 Ill. 146; *Hague* v. *Inhabitants of Hoboken,* 23 N. J. 354.

Unless the easement is obvious as to the adjoining owner, it must exist on premises, and be apparent, open and visible, or be of no effect. *Ingals* v. *Plamondon*, 75 Ill. 118; *Butterworth* v. *Crawford*, 40 N. Y. 349.

This reservation of a court-yard was limited by the deed to fifteen years. But there must be a permanent or perpetual restraint upon the use and mode of occupation, to constitute an easement. Washburn on Easements, (3d ed.) 100; *Gilbert* v. *Peteler*, 38 Barb. 488.

In the construction of the deed from Laflin to Prescott, the intention must control, and effect given thereto. *City of Peoria* v. *Darst*, 100 Ill. 609; *Piper* v. *Connelly*, 108 id. 646; *Wimberly* v. *Hurst*, 33 id. 166; *Manufacturing Co.* v. *Wagon Co.* 91 id. 230; *Mortgage Co.* v. *Gross*, 93 id. 483.

The intention of the parties must be gathered from the entire deed. A recital may qualify general words. *Railroad Co.* v. *Koelle*, 104 Ill. 457; *Allen* v. *Holton*, 20 Pick. 463.

The words "upon condition," in a deed, may be construed as a restriction or limitation, when the intention requires. *Fuller* v. *Ames*, 45 Vt. 400.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

On the 14th day of January, 1863, Matthew Laflin, being the owner of blocks 5, 6 and 9, in canal trustees' subdivision of the west half, and the west half of the north-east quarter of section 17, town 39 north, range 14 east, caused the same to be laid out into lots and alleys, and a plat thereof to be made and recorded. The following is a copy of the plat of block 9, in reference to which this controversy arises:

There is no reference to the dotted line shown on the plat, and supposed to be twenty feet from Monroe and Adams streets, either in the acknowledgment of the plat, in the surveyor's

certificate, or in any of the subsequent deeds of the lots made by said Laflin. The surveyor certifies that he had surveyed and subdivided the blocks into lots, streets and alleys, and that the annexed plat is a true representation of said survey and subdivision. The certificate of acknowledgment of the plat is, that Laflin, etc., acknowledged that they were proprietors of the blocks, (naming them,) and that the figures in black ink near the center of said blocks (lots) indicate the number of said lots, and that the figures in red ink indicate the value of said lots. There is nothing on the face of the plat, or in the certificate of the surveyor, or of acknowledgment, to indicate what the figures appearing upon the plat were intended to represent, other than as above stated. The numbers in red ink, indicating the price of lots, are omitted, as no question arises in respect thereof. The figures in black ink near the center of the lot, from 1 to 55, inclusive, indicate the number of the lot, showing that block 9 was divided into fifty-five lots. What the other figures upon the plat mean is left to conjecture.

On the 22d day of June, 1863, Laflin and wife, by warranty deed, conveyed to Eli S. Prescott, lots 17, 18, 22, 23, 28, 29, and the east twenty feet of lot 27, in said block No. 9, with all the appurtenances thereto belonging, which deed also contains this clause: "Together with the exclusive use of the court-yard between said lot and the street, upon condition that said yard shall only be used as a front-door yard, and that said party of the second part shall put no building upon said yard, except front-door steps, nor erect any fence of unusual height which shall obstruct the view of the neighborhood, nor create nor allow any nuisance which may be objectionable to the neighbors; and, also, upon condition that said party of the second part shall pay all taxes and assessments which shall be levied upon said court-yard, it being the intention of said party of the first part, in reserving said court-yard, to benefit and improve the neighborhood, said reservation to continue

for fifteen years from the date of record of the plat of said subdivision; and after the expiration of said term, the fee of said court-yard shall vest in said party of the second part, his heirs and assigns, without any further conveyance. But in case the conditions upon which the use of said court-yard is granted to said party of the second part shall be violated, then and in that case the said party or parties of the second part, their heirs, executors, administrators or assigns, shall forfeit and pay to said parties of the first part, their heirs, executors, administrators or assigns, the sum of $10 per diem for each and every day said nuisance or obstruction shall remain thereon, said penalty recoverable before any justice of the peace or other court of record."

By several *mesne* conveyances, defendant Agnes F. Irons became the owner of lots 17 and 18, in block 9. Under the deed to Prescott, the parties had entered into possession of the lots according to their description, and upon the purchase by Mrs. Irons of said lots 17 and 18, she went into possession thereof, as it appears, to the lines of said lots east and west, as possession had been delivered by Laflin. There is, however, no controversy as to the width of these lots east and west. It also appears that Laflin had made sales of the other lots in that block fronting on Monroe street, and conveyed the same by deeds containing the same provision as in that to Prescott. Most of the lots fronting on Monroe street were subsequently improved by the erection of substantial buildings thereon, on a line twenty feet south of said street. Shortly before the filing of the bill in this case, Mrs. Irons commenced the erection of six brick and stone dwelling-houses on lots 17 and 18, fronting on Laflin street, the north one thereof extending to the line of Monroe street, and being on the twenty feet designated as a court-yard in said deed. The plaintiffs in error, being owners of other lots in said block 9 fronting on Monroe street, filed this bill to compel Mrs. Irons to remove the building on said twenty-foot strip of land, to enjoin the erection

of any building thereon, and to compel her to front her buildings on Monroe street. At the hearing the court refused the relief prayed, and dismissed the bill.

It is insisted that Laflin, by the plat, made a dedication of the twenty-foot strip, either to the public or to the purchasers of other lots fronting on Monroe street. An intention to dedicate land must be clearly and unequivocally manifested by the owner, and there must be an acceptance of the dedication. The dotted line across the north end of the lots can not be said to afford evidence of an intention to dedicate twenty feet off of the north end of the lots, to the public, for a street, or to widen Monroe street at that point. (See *Princeton* v. *Templeton,* 71 Ill. 68.) Such an intent is clearly negatived by the words written on or along such dotted line, to-wit, "line of front of buildings twenty feet from the street." This is also clearly manifest from the language of the deed. The east and west lines of the lot, it will be observed, extend through to Monroe street, and if the ground north of the dotted line was not intended to constitute a part of the lots, as designated on the plat, such lines would have stopped at the dotted line, or there would have been other indications of the intent that the north boundary of the lot should be the dotted line. Exactly the reverse is true. The dotted line is manifestly not intended as the north line of the lot, which it was intended should be bounded by the south line of Monroe street, but is a designation on the plat of the front line of the buildings to be thereon erected. This becomes very manifest when the words accompanying the dotted line are considered in connection with the reservation in the deed, which will be considered further on. This case differs from that of *Smith* v. *Heath,* 102 Ill. 130, in that in the center of the plat in that case was shown a square, not intersected by the lines of lots, and designated on such plat as "Aldine square," and most, if not all, of the lots were shown upon the plat to abut or front upon such square.

37—128 Ill.

This plat fails to show an intention to dedicate the north twenty feet of the lots, either to the use of the public or to the use of the purchasers of other lots. It is true that the figures "105," on lots 13 and 18, if intended to indicate feet, do not correctly describe the length of the lot. These lots, from Monroe street to the alley, are one hundred and twenty-five feet deep, and the figures "105" would indicate the number of feet from the alley to the dotted line, or south side of the court-yard. But, as before said, there is nothing to indicate or show what such figures represent, either on the face of the plat or in the certificate, unless we are justified in assuming, from the facts appearing, that they mean the length of the lot in feet. (*City of Belleville* v. *Stookey*, 23 Ill. 441; *Village of Winnetka* v. *Prouty*, 107 id. 218; *Town of Lake* v. *LeBahn*, 120 id. 98.) As we have seen, the plat shows the lots extend from Monroe street to the alley, and the figures "105," if intended to represent feet, if added to the twenty feet between the dotted line and Monroe street, would correctly designate the true length of the lot, as platted. But if the calls, by length of the lines, are found to be incorrect, such calls must give way to the actually established metes and bounds of the lot.

The deed from Laflin to Prescott conveys lots 17 and 18, with others, by the numbers as shown upon this plat. Following the granting clause of the deed occur the words, "together with the exclusive use of the court-yard between said lot and the street." The court-yard here referred to is the twenty-foot strip off the north end of the lot, and the exclusive use of it is given "upon condition that such yard shall only be used as a front-door yard, and that said party of the second part shall put no building upon said yard, except front-door steps, nor erect any fence of unusual height, which shall obstruct the view of the neighborhood." The grant of the lot was subject to this restriction and limitation upon the use and enjoyment of that part thereof designated in the deed as a court-yard. This undoubtedly was intended for the benefit of

the other lots fronting on the same street, and to the extent of such restriction of the use of the court-yard it created an implied equitable servitude of the lot granted, in favor of the other of said lots, and each purchaser taking such a deed, took the estate burdened with a like servitude in favor of all the lots, and an equitable easement attached to each and every lot so conveyed, so that the equitable rights and burdens of each lot were mutual and reciprocal, and each lot owner was subjected to the equitable burden, and entitled to the enjoyment of the easement. The power of the grantor to thus impose limitations and restrictions upon the use and enjoyment of the property granted, as he may deem proper, and of the grantee to accept the same, can not be denied, unless opposed to public policy. Nor do we think that the clause of the deed quoted had the effect of limiting the grant. The grant was of the lots as platted. The clause, "together with the use of the court-yard between said lot and the street," must be construed in connection with the plat, and what precedes and follows in the deed.

It is said that such exclusive use shall be upon "condition that said yard shall only be used as a front-door yard," etc., and the intention of the parties with reference thereto is set out as follows: "It being the intention of said party of the first part, in reserving said court-yard, to benefit and improve the neighborhood, said reservation to continue for fifteen years from the date of record of the plat of said subdivision, and after the expiration of said term the fee of said court-yard shall vest in said party of the second part, his heirs and assigns, without any further conveyance." It will be observed that there is no provision made for a forfeiture upon breach of the condition, and it is clear that the estate was not one upon condition. As before said, we think it clear that the title vested in the grantee to the whole of the lot, and that the clause quoted is simply a limitation upon the use of the north twenty feet, for the period of fifteen years from the date of the

recording of said plat. It is manifest that such limitation upon the use by the grantee, was intended for the benefit of the grantor, and of all persons to whom he had or might thereafter sell such lots. The words, "said reservation to continue for fifteen years," can only relate to the use, or limitation upon the use, of the twenty feet designated in the deed as a court-yard, by the grantee, in the manner provided,—that is, as a front-door yard,—and that he shall not erect or build a high fence, or put any buildings thereon, "which shall obstruct the view of the neighborhood." The intention to create a servitude upon each lot for the benefit of all other lots is clearly manifest. Washburn on Easements, 100, and authorities.

As we have seen, the grant was of the lot, by its number, as designated on the plat, and in construing the deed, any clear repugnance between the grant and that limited in the *habendum* or *reddendum*, the latter will be required to yield to the clear words of the grant; but if the words following the grant can be so construed that all may stand together, by limiting the estate without contradicting the grant, that construction must be adopted, in order to give effect to each clause of the deed. This may be done in this case. It is expressly provided, that after the expiration of fifteen years the fee of said court-yard shall vest in the party of the second part, his heirs and assigns, without any further conveyance. That deed was therefore to be operative as a conveyance of title in fee. If the contention of plaintiffs in error is to obtain, it would be to make the deed effective *in futuro*, as respects the so-called court-yard. This is manifestly inconsistent with the grant, and with the evident intention of the parties. All may be rendered consistent if the clause under consideration, in its entirety, be construed as a limitation upon the use of the property for the period limited; and this accords with the expressed intent of the parties, as clearly manifested by the language employed.

Strictly speaking, it can not be said that the clause of the deed referred to is an exception, for the reason that by an ex-

ception in a deed, the grantor withdraws from the effect of the grant some part of the thing itself which would otherwise be included in the grant. Here no portion of the land is reserved or excepted out of the grant. Nor can it, strictly speaking, be said to be a reservation, for the reservation must be to the grantor or the one creating the estate, and must be of something arising out of the thing granted, as, an easement or the like. Washburn on Real Prop. 440.

It is not, however, material that we should determine or define the exact nature of the several equitable rights and duties of the different lot owners, for the reason that they were limited to a term of years, which has expired. It is to be carefully observed that the restriction upon the use by the grantee, of the court-yard is expressly limited. The provision is: "It being the intention of said party of the first part, in reserving said court-yard, to benefit and improve the neighborhood, said reservation to continue fifteen years from the date of the record or plat of said subdivision; and after the expiration of said term, the fee of said court-yard shall vest in said party of the second part, his heirs and assigns, without any further conveyance." The effect of this clause of the deed was, as before stated, to create an equitable easement in Laflin, and the other lot owners to whom he had or might convey; but the "reservation," so-called, operated simply by way of limitation upon the use of the property by the grantees in the several deeds. 3 Washburn on Real Prop. 437; *Noble* v. *Illinois Central Railroad Co.* 111 Ill. 437; *Fuller* v. *Ames,* 45 Vt. 400.

Restrictions on the use of property held in fee are not favored, yet where the intent of the parties is clearly manifested in the creation of restrictions or limitations upon the use of the grantee, for the benefit of the grantor, his heirs or assigns, a court of equity will enforce the same; and the cases are numerous where the reservation of an easement, privilege or benefit, out of the granted premises, has been sustained. See

*Sprague* v. *Snow,* 4 Pick. 54; *Choate* v. *Burnham,* 7 id. 274; *Dyer* v. *Sanford,* 9 Metc. 359; *Fuller* v. *Ames, supra;* 3 Washburn on Real. Prop. 441, *et seq.*

It was manifestly the intention of the parties that at the end of fifteen years from the date of the recording of the plat the grantee should become vested with a fee simple title in the whole of said lot extending to the line of Monroe street, free from any restriction or limitation soever. The complainants and others acquiring title under the deeds from Laflin, acquired the same right, and took with notice that the limitation upon the use of the property by the several grantees in such deed would terminate at the end of that period. Equity, looking beyond the mere form, and into the substance, will give effect to the intent of the parties when it can be found, and in such case will disregard mere technical distinctions. The estate here intended to be granted was the fee, which imports absolute and unconditional ownership. As said by the learned judge who tried this case below: "If there is any doubt whether the restrictions were to cease then, (at the end of fifteen years,) or whether they were to be permanent, the existence of the doubt is to deny the existence of the easement or privilege. All doubts must be resolved in favor of natural rights, and against restrictions thereon."

The decree of the circuit court dismissing the bill was properly entered, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE BAILEY, having heard this case in the Appellate Court, took no part in its decision here.