(No. 21887.—)

The Greenlee Foundry Company, Appellant, *vs.* The Limits Industrial Railroad Company, Appellee.

*Opinion filed October 21, 1933—Rehearing denied Dec. 8, 1933.*

Farthing, J., dissenting.

McNab, Holmes & Long, (Allan W. Cook, and Joseph T. Scott, of counsel,) for appellant.

William Friedman, for appellee.

Mr. Justice Shaw delivered the opinion of the court:

The appellant, the Greenlee Foundry Company, a corporation, prosecutes this appeal from a final order and judgment of the superior court of Cook county in favor of the appellee, the Limits Industrial Railroad Company, a corporation, in an action of ejectment by which the appellant seeks to require the appellee to remove its railroad tracks from a portion of Fourteenth street, in the town of Cicero, in Cook county, Illinois. This case has been tried four times in the superior court of Cook county, and the matter of this particular right of way has been once before passed upon by this court in the case of *Limits Industrial Railroad Co. v. American Spiral Pipe Works,* 321 Ill. 101.

The appellant is the owner in fee simple of lots 75 to 96, inclusive, in a subdivision of the southeast quarter of the northeast quarter of the northwest quarter of section 22, in township 39 north, range 13 east of the third principal meridian, in Cook county, as shown by a plat thereof surveyed, acknowledged and recorded on July 2, 1899, by Edward D. Mandell. The legal effect of this plat as to conveying or not conveying a fee simple title to the streets in the town of Cicero depending upon whether the plat is a statutory plat or only a common law plat is the point at issue in this case.

At the time of the making, acknowledging and recording of this plat, the proprietor, Edward D. Mandell, was the owner in fee simple of the ten acres shown by it, excepting the easterly thirty-three feet thereof, which were at that time owned by the Chicago and Western Indiana Belt Railway Company. The plat as it now appears of record and as shown by the abstract in this case is as follows:

It will be noted that the sufficiency of this plat must be considered as of the time it was first recorded, which re-

quires that the various vacations shown thereon should be disregarded.

The record shows that the railroad tracks of the appellee were laid down on Fourteenth street in front of the property of the appellant pursuant to certain ordinances of the town of Cicero, and it further appears that these tracks were built between the hours of six o'clock P. M. on a Saturday and eight o'clock A. M. on the following Monday, immediately after the filing of an opinion adverse to the appellee in this court in the case of *Limits Industrial Railroad Co.* v. *American Spiral Pipe Works, supra.* It is conceded by both parties that the railroad tracks are in part to the north of the center line of Fourteenth street, and that if this is a common law plat the appellant is entitled to a judgment, whereas if it is a sufficient statutory plat the judgment of the trial court must be affirmed.

At the time this plat was made and recorded the subject matter thereof was governed by the act of 1874. (Cahill's Stat. chap. 109, sec. 1 *et seq.*) Section 1 of that act, which is controlling in this case in so far as it is applicable, is as follows: "Whenever the owner of lands shall wish to subdivide the same into two or more parts for the purpose of laying out a town, or making any addition to any city, village or town, or of re-subdividing any lots or blocks therein, he shall cause the same to be surveyed and a plat thereof to be made by the county surveyor or some other competent surveyor, which plat shall particularly describe and set forth all the streets, alleys, common or public grounds, and all the in and out lots or fractional lots or blocks within, adjoining or adjacent to the land so divided, giving the names, width, courses and extent of all such streets and alleys, and numbering all lots and blocks by progressive numbers, giving their precise length and width. Reference shall also be made upon the plat to some known and permanent monument, from which future surveys may be made," etc.

The appellant contends that the plat must fail as a statutory plat for the reason that as recorded it shows and includes the easterly thirty-three feet of the ten-acre tract, which, as above noted and shown on the plat, at that time belonged to the Chicago and Western Indiana Belt Railway Company. This contention is based upon the wording of the statute, "whenever the owner of lands shall wish to subdivide the same," etc. It is argued that because there is included in the plat the particular thirty-three feet which the proprietor did not own, the plat is not in strict compliance with the statute and must therefore fail. In support of this contention the appellant relies principally upon the case of *Ryerson* v. *City of Chicago,* 247 Ill. 185, where the following language occurs: "We have held many times that a plat will not convey the fee of the street unless made out, certified, acknowledged and recorded in strict conformity with the statute, but will operate as a common law dedication creating an easement, only, in the street.—*City of Belleville* v. *Stookey,* 23 Ill. 441; *Gosselin* v. *City of Chicago,* 103 id. 623; *Gould* v. *Howe,* 131 id. 490; *Village of Vermont* v. *Miller,* 161 id. 210; *Davenport Bridge Railway Co.* v. *Johnson,* 188 id. 472; *Birge* v. *City of Centralia,* 218 id. 503." It is the appellant's argument, based upon this authority, that a "strict conformity with the statute" would require that this easterly thirty-three feet be omitted from the plat and from the description of the property in the certification and acknowledgment of the plat.

An examination of the authorities cited in the *Ryerson case, supra,* discloses that in none of those cases was there a slight variation from the statute but that in each of them the variation was substantial. In the case of *City of Belleville* v. *Stookey, supra,* the street in question was not named nor was its length, width, boundaries or corners given. In the case of *Gosselin* v. *City of Chicago, supra,* the acknowledgment was by an unauthorized attorney in fact. In the

case of *Gould* v. *Howe, supra,* the plat was not acknowledged at all. In the case of *Village of Vermont* v. *Miller, supra,* the acknowledgment was not as required nor before the proper officer. In the case of *Davenport Bridge Railway Co.* v. *Johnson, supra,* the acknowledgment was not as required by statute nor before the proper officer, and in the case of *Birge* v. *City of Centralia, supra,* the acknowledgment was not taken before the proper officer. It will thus be seen that although in the *Ryerson case* the rule is announced that the plat must be certified, acknowledged and recorded in strict conformity with the statute, in all of the cases cited in support of that rule the departure from the statutory requirements was grave and substantial.

In the case of *Alton and Southern Railroad* v. *Vandalia Railroad Co.* 268 Ill. 68, this court on page 74 used the following language: "Construing a statute strictly means, under the authorities, simply that it should be confined to such subjects or applications as are obviously within its terms and purposes. (2 Lewis' Sutherland on Stat. Const.— 2d ed.—secs. 518, 519.) In recent years the rule of strict construction has lost much of its force, as it has become more and more generally recognized 'that the paramount duty of the judicial interpreter is to put upon the language of the legislature, honestly and faithfully, its plain and rational meaning and to promote its object.' (Endlich on Interpretation of Statutes, sec. 329.) The intention of the legislature is the law. This intention is to be gathered from the necessity or reason of the enactment, with the meaning of the words enlarged or restricted according to their real intent. In determining the meaning of a statute the courts will keep in mind the circumstances surrounding its enactment and the objects sought to be obtained by the statute.—*Hoyne* v. *Danisch,* 264 Ill. 467; *Warner* v. *King,* 267 id. 82."

The Mandell plat does not purport to subdivide nor in any way affect the easterly thirty-three feet, which are

clearly designated on the plat as being the property of the Chicago and Western Indiana Belt Railway Company, and the inclusion of those thirty-three feet would appear to be entirely proper pursuant to the words of the statute, "all the in and out lots or fractional lots and blocks within, adjoining or adjacent to the land so divided." We would consider it not a reasonable but a strained construction to hold that this defect, if it is a defect, would be sufficient to invalidate the plat in question, standing by itself.

Another contention of the appellant is as to the sufficiency of the monuments required by the statute locating the survey. We do not consider this objection to be well taken. In the case of *Trustees of Schools* v. *Dassow*, 321 Ill. 346, we held that lines run by government surveyors are sufficient monuments, and that where a plat shows the exact location of a section line or half-section line and the point where it is crossed by a quarter-section line it is sufficient to comply with the statute. The plat in question clearly shows government lines from which measurements can easily be made, and although none of them are either section lines or half-section lines, as in the *Dassow case*, they are certainly equally valuable to the surveyor or engineer and are unquestionably sufficient for any competent person to locate the points in question.

The appellant's remaining contention is of a more substantial character, and, we believe, decisive of the case. An examination of the plat shows that midway between the north and south lines thereof, or half way between Thirteenth street and Fourteenth street, there is a strip sixty-six feet wide north and south, running east and west across the entire plat, which now carries the words, "Vacated Doc 5985700-Bk-pg." It is shown by the record that these words were not on the plat as originally recorded, but this particular space, at the time of the recording of the plat, did not show anything as to whether it was intended to be a street, an alley, a park or public ground or for what pur-

pose it may have been intended. On this point the appellee relies upon the cases of *Village of Lee* v. *Harris,* 206 Ill. 428, and *Kimball* v. *City of Chicago,* 253 id. 105.

The case of *Village of Lee* v. *Harris, supra,* did not turn upon the question of whether or not the plat was a sufficient statutory plat, but upon whether or not it was sufficient to show an intention to dedicate the street to a public use at common law and whether or not there had been an acceptance by the village. The court referred to and quoted with approval from the case of *Clark* v. *McCormick,* 174 Ill. 164, in which it was held that any declaration, either oral or written, would be sufficient if it established the intention of the proprietor to dedicate the strips in question to public uses. In the *Clark case* the court uses the following language: "Such intention may be established in any conceivable way by which it may be made manifest. A survey and plat, alone, are sufficient to establish a dedication if it is evident from the face of the plat it was the intention of the proprietor to set apart certain grounds for public use." Thus it will be seen that while in the case of *Village of Lee* v. *Harris, supra,* relied upon by the appellee, certain spaces claimed as alleys, appearing upon the plat as strips between the lots in the different blocks, were held to sufficiently manifest the intention of the proprietor of the plat, the case does not hold that the plat was a sufficient statutory plat. It merely holds that the plat was a sufficient evidence of a common law dedication.

The other case relied upon by the appellee (*Kimball* v. *City of Chicago, supra,*) was a bill in chancery seeking to restrain the city of Chicago from taking possession of a certain sixteen-foot strip of ground which the city claimed to be an alley shown by a plat, and the question in the case was not whether or not the plat was a statutory plat but whether there had been a sufficient dedication of that particular sixteen-foot strip to entitle the public to use it as an alley. In the course of its opinion the court says: "If,

however, the presumption of delivery was not rebutted by that fact and Stodder was not the owner of said premises at the time he caused the land to be subdivided, that fact would only go to the question whether the plat filed by him was a statutory plat and conveyed the fee of the streets and alleys to the city of Chicago, or a common law plat; and from the view we take of this case it is immaterial whether said plat is to be treated as a statutory or common law plat, as Kerr immediately recognized the said plat by making conveyances with reference thereto, and he and his grantees are estopped to deny that said plat is at least a good common law plat of said subdivision, and if said strip was offered by said plat to be dedicated as a public alley, and it was accepted by the city as a public alley before the offer of dedication was withdrawn, this bill can not be maintained." It will be seen from this quotation that the court did not decide whether the plat was a statutory plat or a common law plat but held that it was at least good as a common law plat. The *Kimball case,* from which we have just quoted, contains citations of a number of other cases where plats not sufficient to comply with the statute above quoted have nevertheless been held sufficient to indicate, as common law plats, certain streets and public spaces to have been properly dedicated. In the case we are now considering it is to be borne in mind that we are not determining whether or not a sufficient dedication to a public use is shown by a plat, but whether or not the plat is sufficient, as a statutory plat, to vest the fee simple title to the streets in the municipality.

The case of *City of Belleville* v. *Stookey, supra,* was decided by this court in 1860 under the laws of 1833, (Laws of 1833, p. 599,) which act was very similar to the law as it exists at the present time and as it existed at the time of the platting of Mandell's subdivision. That act provided, in substance, that any person wishing to lay out a town or an addition thereto should cause the same to be

surveyed, a plat or map made, "which shall particularly describe all streets, alleys, commons or public grounds, and all in and out lots, etc., giving the names, widths, corners, boundaries, and extent of all such streets and alleys." The act further provided that a proper plat or survey, acknowledged and recorded as required by the act, should have the legal effect of vesting the title in the land intended for streets and alleys, etc., in town or city. In that case certain ground claimed as a street was not named as such on the plat, nor was its length, width, boundaries or corners given, as required by the statute. In its opinion the court uses the following language: "From the plat and certificate it cannot be known whether it was designed for a street or lot, or, in fact, whether for either. In this respect there is a failure to conform to the requirements of the statute, and as the plat and certificate, under the statute, take the place of a deed of conveyance, its provisions should have been at least so far observed as to describe it with such a degree of certainty that it might be determined for what purpose it was intended."

The statute in force at the time of the platting of Mandell's subdivision required that it should particularly describe and set forth all of the streets, alleys, common or public grounds, and all the in or out lots or fractional lots or blocks within, adjoining or adjacent to the land so divided, giving the names, widths, courses and extent of all such streets and alleys, and numbering all lots and blocks by progressive numbers. A reference to the plat shows a sixty-six-foot strip running in an easterly and westerly direction across the same, which is entirely devoid of any name or other designation. From its width we might infer it to be intended as a street, but the fact that the street at the north of the plat is indicated as Thirteenth street and the one at the south of the plat as Fourteenth street would tend to negative such an intention. It seems to have been referred to in the evidence, at times, as Thirteenth place,

but why or by what authority does not appear. It is true that we know its width and that by a simple calculation we can determine its length, but there is no way whereby we can tell whether it was intended as a street, as a park, as a commons, as a public ground of some kind, or as a lot or parcel of ground which the proprietor intended to retain for his own future use or future subdivision. We do not feel that we are authorized to infer or conjecture something which is not definitely shown thereby, and it would certainly be only an inference on our part if we were to hold that the central sixty-six-foot strip above described was intended by the proprietor to be a street when he did not so state on the face of the plat. To complete a statutory dedication in such a manner as to convey a fee simple title in the streets and alleys to the municipality there must be not only an evident intent on the part of the proprietor to make such a dedication and conveyance but the statute must be so substantially complied with that the matter is free from any necessity for conjecture or inference.

It being impossible to determine from the plat what the intention of the proprietor was as to the central sixty-six feet above mentioned, without resort to conjecture or inference, it necessarily follows that the plat is not a sufficient statutory plat but is at most a common law plat. It follows that the fee simple title to the streets did not pass to the municipaliy and that the superior court was in error in so holding.

The judgment will be reversed and the cause remanded to the superior court of Cook county, with directions to enter a judgment in favor of the appellant, the plaintiff below, and against the appellee, the defendant below.

*Reversed and remanded, with directions.*

Mr. JUSTICE FARTHING, dissenting.